IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 1:22-cv-421 |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| YEHUDA CAHAN, ) | |
| a/k/a Jehuda Cahan or George Cahan, ) | |
| ) | |
| *Defendant*. ) | |

## COMPLAINT

The plaintiff United States of America, at the direction of a delegate of the Attorney General and with the authorization of a delegate of the Secretary of the Treasury, pursuant to 31 U.S.C. §§ 5321(b)(2) and 3711(g)(4)(C), brings this civil action to collect the penalties, plus statutory additions, assessed under 31 U.S.C. § 5321(a)(5) against Yehuda Cahan for his willful failure to report his financial interest in a foreign bank account during 2005, 2006, 2007, and 2008 as required by 31 U.S.C. § 5314 and its implementing regulations. For its complaint, the United States alleges as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 because it arises under a federal statute, the United States is the plaintiff, and the action seeks recovery or enforcement of civil penalties.

2. On information and belief, defendant Yehuda Cahan, also know as Jehuda Cahan or George Cahan, ("Cahan") resides in University Heights, Ohio, which is within the jurisdiction of this Court.

**Legal Duty to Report Foreign Financial Accounts**

3. Section 5314 of Title 31 of the U.S. Code authorizes the Secretary of the Treasury to require United States persons to report certain transactions with foreign financial entities. Under the statute's implementing regulations "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists." 31 C.F.R. § 1010.350(a).

4. To fulfill this requirement, a U.S. person must file a "Report of Foreign Bank and Financial Accounts," commonly known as "FBAR." *See id.*

5. An FBAR requires a U.S. person to disclose, among other things, the maximum value of each foreign account during the calendar year reported, the type of account, the name of the financial institution in which the account is held, the account number, and the mailing address of the financial institution in which the account is held.

6. For calendar years 2005, 2006, 2007, and 2008, an FBAR was due by June 30th "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 1010.306(c). For calendar year 2005, the FBAR was due by June 30, 2006; for calendar year 2006, the FBAR was due by June 30, 2007; for calendar year 2007, the FBAR was due by June 30, 2008; and for calendar year 2008, the FBAR was due by June 30, 2009.

7. For calendar years 2005, 2006, 2007, and 2008, U.S. persons reported their foreign account relationships on Form TD-F 90-22.1.

8. Schedule B is an attachment to the federal individual income tax return (Form 1040) that is used for reporting, among other things, interest and dividend income, as well as any

2

financial interest in or signature authority over financial accounts located in foreign countries. For tax years 2005, 2006, 2007, and 2008, Schedule B referred to the FBAR filing requirement and alerted the taxpayer that if he or she had an interest in or signature or other authority over a financial account located in a foreign country the taxpayer should see the instructions for exceptions and filing requirements for the FBAR.

9. Section 5321(a)(5) of Title 31 authorizes the imposition of civil penalties for a willful failure to comply with the reporting requirements of § 5314. Specifically, § 5321(a)(5)(C) provides for a willful penalty equal to the greater of $100,000 or 50% of the balance in the account at the time of the violation.

10. The penalty under 31 U.S.C. § 5321(a)(5)(C) is subject to statutory additions, including interest and late-payment penalties pursuant to 31 U.S.C. § 3717.

## Factual Background

11. Cahan is a citizen of the United States.

12. Cahan is married to Faygie Cahan. They have been married since 1981.

13. Cahan has two brothers: Favi Cahan and Menachem ("Mendy") Cahan.

## Relationship With UBS

14. On or about August 31, 1997, Cahan traveled from the United States to Switzerland.

15. On August 31, 1997, in Switzerland, Cahan opened a bank account at Swiss Bank Corporation. In 1998, Swiss Bank Corporation merged with United Bank of Switzerland and the combined bank became known as UBS.

16. The account was assigned a number ending with 8761, hereinafter referred to as the "UBS Account."

3

17. To open the UBS Account, each account holder was required to fill out and sign forms.

18. One such form, *Opening of an account/custody account*, required account holders to provide certain information, such as the name, date of birth, address, correspondence instructions, telephone numbers, and an identification document.

19. To open the UBS Account, in the space on *Opening of an account/custody of account* form to be filled out for "Account holder 1," Cahan provided some information about himself, including his first and last name, date of birth, nationality, profession, and address.

20. The form contained similar spaces for "Account holder 2" and "Account holder 3." Those spaces were not filled in and contained two strikethrough lines made in pen indicating that there were no other account holders.

21. In the space on the form for directions as to correspondence related to the UBS Account, Cahan requested that all "Correspondence—except in the case of special circumstances—" be sent not to himself but to Felix Kramer ("Kramer"), a Swiss asset manager, at Kramer's address in Switzerland.

22. On August 31, 1997, Cahan executed a *Direct Mailing of Correspondence* form, thereby authorizing all correspondence relating to the UBS Account to bear the name and address of the account manager in addition to the account number.

23. Spaces on the form for Cahan's home and office telephone numbers were left blank.

24. Among other things, the form provided for a general authorization by the account holder to permit UBS to make investments on the holder's behalf.

25. On the form, Cahan chose the U.S. dollar to be the reference currency for the UBS Account.

26. On August 31, 1997, Cahan signed the *Opening of an account/custody of account* form by hand, and the UBS Account was opened.

27. On August 31, 1997, Cahan executed another form, Form A, *Verification of the Beneficial Owner's Identity*, in which Cahan stated that he was "the beneficial owner of the assets deposited with the bank" in the UBS Account and would "inform the bank immediately of any changes."

28. On August 31, 1997, Cahan executed a *General Power of Attorney* form granting certain authorities over the UBS Account to his brother Favi Cahan.

29. Although the form contains spaces designated as "Attorney 2" and "Attorney 3," those spaces were not filled in and instead contain strikethroughs.

30. On August 31, 1997, Cahan executed a *Power of attorney for the management of assets for external asset managers* form, thereby granting authority to Kramer, the Swiss asset manager, to invest the assets in the UBS Account.

31. On May 31, 2001, Kramer executed a form, *Profil fur Kunden von Finanzintermediaren* (translation: Profile for Financial Intermediaries) in which Kramer stated that he is familiar with Cahan and his family, and that Cahan was the beneficial owner of the UBS Account.

32. On October 12, 2001, Cahan directed UBS to neither acquire nor hold U.S. securities in his UBS Account.

33. On November 13, 2001, Cahan opened a margin on the UBS Account giving UBS a security interest over the assets.

34. On December 7, 2002, Cahan executed a form, *Basic document for Account/Custody Account* for his UBS Account.

35. The *Basic document for Account/Custody Account* form indicates that Cahan is the only account holder. The spaces to list other account holders are not filled; instead, they bear a strikethrough. The form provides Cahan's U.S. address but directs correspondence to be sent not to him but to Kramer in Switzerland.

36. On December 7, 2002, Cahan executed a *General power of attorney* form for his UBS Account. The form granted, among many other powers, "unlimited power of attorney (without right of substitution) . . . in dealing with UBS . . . and in particular to dispose of any and all assets" in the UBS Account.

37. The form has three spaces for the names of the grantees marked as "Attorney 1," "Attorney 2," and "Attorney 3."

38. Cahan's brother Favi Cahan is listed in the space for "Attorney 1."

39. Cahan's wife Faygie Cahan is listed in the space for "Attorney 2."

40. The space for "Attorney 3" was not filled in and contained two handwritten strikethrough lines.

41. On December 7, 2002, Cahan executed a Form A, *Verification of the beneficial owner's identity*, in which Cahan stated that he is "the beneficial owner of the assets concerned" in the UBS Account and that he would undertake "to inform the bank immediately of any changes."

42. Cahan has never informed UBS of any changes in the beneficial ownership of the assets in the UBS Account.

43. On May 4, 2004, Cahan executed a *Power of attorney for the management of assets for financial intermediaries* form, thereby authorizing Chartvalor AG, a Swiss corporation related to Kramer, to manage the assets in the UBS Account.

44. On May 10, 2004, UBS was directed to mail all correspondence for Cahan's UBS Account directly to Chartvalor AG in Zurich.

45. Cahan never granted power of attorney over the UBS Account to his mother.

46. On November 27, 1999, Mendy Cahan, Mr. Cahan's brother who also had an account with UBS, ending in 764 ("Mendy UBS Account"), handwrote a request, addressed to Kramer asking that Mr. Cahan be permitted to transfer funds "through" the Mendy UBS Account, "that is to deposit & withdraw equal amounts" and asking that information about the Mendy UBS Account be made available to Mr. Cahan.

47. In addition to the Mendy UBS Account, an account has been maintained in the name of Mendy Cahan at a financial institution in the United States. At least on some occasions, if not always, that account ending in 6173 has been maintained at Independence Bank ("Mendy US Account").

48. On numerous occasions, in the years 1999 through 2009, Mr. Cahan made handwritten requests to transfer funds from his UBS account through the Mendy UBS Account to the Mendy US Account.

49. In this way, Mr. Cahan transferred $780,000 out of his UBS Account over the years 1999 to 2009.

**Cahan Failed to Report His Interest in the UBS Account on FBARs for 2005 through 2008**

50. Cahan failed to timely file an FBAR for calendar year 2005.

51. Cahan failed to timely file an FBAR for calendar year 2006.

52. Cahan failed to timely file an FBAR for calendar year 2007.

53. Cahan failed to timely file an FBAR for calendar year 2008.

### Tax Compliance

54. Cahan retained Mark Ettinger ("Ettinger"), CPA, to prepare his U.S. Individual Income Tax Returns (Forms 1040) for 2005, 2006, 2007, and 2008, all of which were filed with his wife Faygie Cahan using the filing status "married filing jointly."

55. Cahan first retained Ettinger as a return preparer in the early 1990s.

56. On his Form 1040 for each of the years listed, below, Cahan reported the following amounts of Total Income:

| Tax Year | Total Reported Income |
|---|---|
| 2003 | $37,072 |
| 2004 | $40,759 |
| 2005 | $37,072 |
| 2006 | $50,184 |
| 2007 | $46,033 |
| 2008 | $20,971 |

57. Cahan reported the following items on the tax returns, all of which were earned in his accounts with domestic financial institutions, such as Smith Barney:

| Tax Period | Interest | Dividends | Capital Gains (Losses) |
|---|---|---|---|
| 2003 | $39 | None | ($8,958) 2002 carryover |
| 2004 | $38 | $2,888 | $3,717 |
| 2005 | $125 | $1,898 | $3,950 |
| 2006 | $173 | $1,345 | ($561) |
| 2007 | $162 | $500 | $14,669 |
| 2008 | $171 | None | None |

58. Cahan did not report any income earned from sources outside of the United States on any of his federal income tax returns for 2003 through 2008.

59. Cahan did not include a Schedule B, Interest and Ordinary Dividends, with his income tax returns for the tax years 2003, 2006, 2007, or 2008.

60. With respect to the preparation of his income tax returns for 2003, 2004, 2005, 2006, 2007, and 2008, Cahan did not disclose any of his offshore banking activities to Ettinger.

61. Schedules B were included with his tax returns for the tax years 2004 and 2005. In Part III, Question 7a, Cahan checked the box "No" to indicate that he did not have an interest in or signature or other authority over a financial account located in a foreign country at any time during those years. The Schedules B did not report any offshore income. The tax returns were signed under penalties of perjury.

62. The Schedules B filed with Cahan's 2004 and 2005 federal income tax returns referred to the FBAR filing requirement, directing taxpayers to see the instructions for the exceptions and filing requirements for Form TD F 90-22.1.

63. To assist in preparation of his tax returns for 2003 through 2008, Cahan received from Ettinger tax organizers or similar questionnaires of approximately 30 pages each, which Cahan read on at least one occasion but never answered.

64. Cahan reviewed all tax returns prepared on his behalf by Ettinger before such returns were filed.

65. Cahan reviewed all the tax returns prepared by Ettinger for Cahan for the income tax years 2003 through 2008 before they were filed.

**IRS Calculation of the FBAR Penalties for 2005, 2006, 2007, and 2008**

66. In each of calendar years 2005, 2006, 2007, and 2008, the balance of Cahan's UBS Account exceeded $10,000.

67. In June of 2006, the balance of Cahan's UBS account was $1,581,658.07.

68. In June of 2007, the balance of Cahan's UBS account was $1,886,566.41.

69. In June of 2008, the balance of Cahan's UBS account was $1,345,156.62.

70. On or about March 26, 2009, Cahan directed that all of his assets in the UBS account be transferred to Neue Privat Bank. UBS terminated the relationship on or about March 27, 2009. Thus, in June of 2009, the balance of Cahan's UBS account was $0.

71. Utilizing the statutory discretion afforded to the Secretary of the Treasury, the IRS determined the willful penalties for 2005 through 2008 by determining the balance of the account as of June 2006, June 2007, June 2008, and June 2009. The highest of those balances was June 2007 when the balance was $1,886,566.41. The IRS determined the willful FBAR penalties by calculating 50% of the June 2007 balance, for a total of $943,282. The IRS determined the penalty for 2005 through 2008 by allocating the total amount among the four years, with the penalty assessment for 2008 being limited to $100,000 because the account was closed before the FBAR due date and by dividing the remainder equally across 2005, 2006, and 2007.

72. On March 19, 2020, a delegate of the Secretary of the Treasury, in accordance with 31 U.S.C. § 5321, timely assessed willful FBAR penalties against Cahan as follows:

| Account | Calendar Year | Account Balance Relied Upon | Total Penalty |
|---|---|---|---|
| UBS Account | 2005 | $1,581,658.07 | $281,094.00 |
| UBS Account | 2006 | $1,886,566.41 | $281,094.00 |
| UBS Account | 2007 | $1,345,156.62 | $281,094.00 |
| UBS Account | 2008 | $0 | $100,000.00 |
| TOTAL | | | $943,282.00 |

73. A delegate of the Secretary of the Treasury properly sent Cahan notice of the liabilities for the FBAR penalties set forth in ¶ 72, above, and made demand for payment.

74. Despite the notice and demand for payment, Cahan has failed to pay the FBAR penalties assessed against him for 2005, 2006, 2007, and 2008. As a result, he owes $1,065,882.83, plus interest and failure to pay penalties under 31 U.S.C. § 3717, and associated fees accruing from and after March 8, 2022.

75. The 2005, 2006, 2007, and 2008 penalties assessed against Cahan remain unpaid and he is liable for such amounts until they are paid in full.

WHEREFORE, the plaintiff United States of America requests that the Court:

A. Enter judgment of $1,065,882.83 in favor of the plaintiff United States of America and against the defendant Yehuda Cahan for FBAR penalties for calendar years 2005, 2006, 2007, and 2008 under 31 U.S.C. § 5321(a)(5), including statutory additions and interest and late-payment penalties pursuant to 31 U.S.C. § 3717(e)(2), plus statutory additions and interest and late-payment penalties that continue to accrue on and after March 8, 2022; and,

B. Award the United States of America its costs incurred in connection with this action, along with such other relief as justice requires.

DAVID A. HUBBERT

Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Angela R. Foster*
ANGELA R. FOSTER
SAMANTHA S. LIEB
Trial Attorneys
Tax Division, Department of Justice
P.O. Box 55
Washington, D.C. 20044
(202) 616-9183 (Foster)
(202) 616-2901 (Lieb)
(202) 514-5238 (fax)
Angela.R.Foster@usdoj.gov
Samantha.Lieb@usdoj.gov